**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LINDA JEAN GRACZ, ) | |
| ) | |
| Plaintiff, ) | No. 16 cv 4099 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Linda Jean Gracz ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act. For the reasons discussed more fully below, the Court remands this matter for further proceedings consistent with this opinion. Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security [dkt. 13] is granted as stated herein. The Commissioner's Motion for Summary Judgment [dkt. 15] is denied.

**I. Background**

    **a. Procedural History and Claimant's Background**

Plaintiff filed an application for disability insurance benefits on December 26, 2012, with an alleged onset date of disability as of November 15, 2008. [Record ("R") 12, 243.] Her last day of work coincided with her alleged onset date. [R 124.] Plaintiff was last insured for disability insurance benefits on December 31, 2013. [R 14, Finding 1.] To obtain benefits, Plaintiff would have to establish disability onset on or before her date last insured, which was December 31, 2013.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

During the application process for disability insurance benefits, Plaintiff claimed that she stopped working on the alleged onset date due to a combination of physical and mental impairments: fibromyalgia, chronic fatigue, pubic symphysis separation, anxiety, depression, nerve pain, and insomnia. [R 124, 284.] Plaintiff's past relevant work consisted of one occupation (sales/office manager) from June of 1991 through November 15, 2008. [R 60-61, 132, 285.] She worked for builders of new homes, where she greeted new customers and took them through model homes, worked with contractors and builders, and managed the paperwork in connection with the sales activities. [R 60-62.]

Plaintiff's disability insurance benefits application was denied initially on October 10, 2013, and again at the reconsideration stage on July 23, 2014, on the basis that Plaintiff retained the ability to perform simple, light, unskilled work. [R 153-163.] Plaintiff timely requested an administrative hearing, which was held on September 3, 2015, before Administrative Law Judge ("ALJ") Victoria A. Ferrer. [R 32, 166.] Plaintiff was represented by counsel, and a Vocational Expert ("VE") testified. [R 32-123.]

b. **The ALJ's Decision**

On November 20, 2015, the ALJ issued a written decision denying Plaintiff disability benefits. [R 9-31.] As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2013. [R 14]. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since her alleged onset date of November 15, 2008. [R 14-15.] At step two, the ALJ found that Plaintiff had the severe impairments of fibromyalgia; pubis dysfunction; obesity; depression; and anxiety. [R 15.] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [*Id.*] Before step four, the ALJ found that Plaintiff had the

residual functional capacity ("RFC")[2] to perform a wide range of light work limited to simple, routine, repetitive tasks involving simple instructions and simple decisions. [R 17.] In determining Plaintiff's RFC, the ALJ found the Plaintiff "credible as to the existence of her impairments, [but did] not find credible her allegations regarding the severity and persistence of her symptoms as well as the functional limitations they allegedly cause, or caused prior to the date last insured", and specifically noted that the evidence did not reveal the presence of the requisite number tender points for fibromyalgia. [R 20.] However, Plaintiff's "continued complaints of pain, as well as her obesity, [were] taken into consideration in determining that she is limited to work at the light exertional level." [*Id*.] At step four, the ALJ found that Plaintiff was unable to perform her past relevant work, which was skilled and performed at a light exertional level by Plaintiff for both the sales/office manager functions. [R 23.] Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy Plaintiff could perform. Specifically, the ALJ relied upon VE testimony that Plaintiff could perform the unskilled light exertional jobs of office helper, maid/housekeeper cleaner,[3] and arcade attendant. [R 23-24.] Because of this determination, the ALJ found Plaintiff not disabled under the Act. [R 24-25.]

   c.   **Issues Before the Court**

On February 12, 2016, the Appeals Council denied plaintiff's request for review [R 1-6], making the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review, alleging: a) the ALJ's determination was erroneous at step two of her analysis; b) the ALJ's determination was erroneous at step three of her analysis; c) the ALJ's RFC determination was erroneous; d) the ALJ's credibility determination was

---

[2] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

[3] The actual DOT title specified by the VE is "housekeeping cleaner" (DOT #323.687-014), not "housekeeper cleaner" as used by the ALJ.

3

patently wrong; and e) the ALJ's determination was erroneous at step five of her analysis. [Dkt. 14.] With regard to the ALJ's alleged step five errors, the Plaintiff alleges, *inter alia*, that the ALJ erred in accepting the VE's testimony without any proof as to the source and reliability of the VE's information, particularly when the VE was questioned as to how he arrived at his numbers for certain jobs existing in the economy and his reduction of the number of those jobs to accommodate the ALJ's hypotheticals. [*Id.* at p. 19.]

The Commissioner's Motion for Summary Judgment [dkt. 15] is styled as a summary judgment motion although it is a response in opposition to Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security [dkt 14]. The Commissioner's Motion raises no new issues in its response to Plaintiff's memorandum of law.

## II.  Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing her past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps

of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

#### a. The VE's Backup Data Must Be Available on Demand

The Plaintiff argues the ALJ erred in accepting the VE's testimony concerning his numbers for certain jobs existing in the economy and his reduction of the number of those jobs based on the ALJ's hypotheticals, without any data in support of the same after the VE had

specifically been asked by Plaintiff's attorney to provide that data during the administrative hearing.

As mentioned above, the VE in the instant case opined that Plaintiff[4] could perform the unskilled light exertional jobs of office helper, maid/housekeeping cleaner, and arcade attendant. [R 108-09.] As to office helper, the VE reduced the Bureau of Labor Statistics job availability numbers by 25%; the VE reduced the number of available maid/housekeeping cleaner positions by 40%; and the VE reduced number of available arcade attendant positions by 50%. [*Id.*] For each of these positions, the VE never specified whether he reduced the numbers in the national economy, the numbers in Illinois, or took some other type of reduction. Nonetheless, this is the data the ALJ (and this Court) is left to work with. Thus, the argument raised by Plaintiff that the ALJ's step five determination was erroneous holds particular sway.

In general, the role of a vocational expert is to provide information regarding the kinds of work and the number of jobs in the national economy a hypothetical person with certain limitations can perform. *Pagos v. Colvin*, 2015 WL 1502923, at *7 (N.D. Ill. Mar. 27, 2015); *Pelfrey v. Com'r of Soc. Sec.*, 2010 WL 909134, at *4 (S.D. Ohio Mar. 10, 2010); *see also*, *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (role of a VE is to "translate[ ] factual scenarios into realistic job market probabilities"). Typically, one of the sources a VE will rely on is The Dictionary of Occupational Titles ("DOT"). The DOT is a compendium of basic occupational information which lists occupational demands and duties and their accompanying mental and physical requirements and skills. However, the DOT was last revised in 1991, and as to its relevance, the Seventh Circuit has stated, "not only is [the DOT] an obsolete catalog of jobs (most of the entries in it date back to 1977) but it contains no statistics regarding the number of

---

[4] A hypothetical question posed to the VE must accurately portray the claimant's individual physical and mental impairments and RFC, to the extent they are supported by the medical evidence in the record. *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994).

jobs in a given job category that exist in the local, state, or national economy." *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir.2014); *see also*, *Forsythe v. Colvin*, 813 F.3d 677, 681 (7th Cir. 2016) ("[t]he vocational experts and administrative law judges can't be blamed for the poverty of the data concerning jobs that applicants for social security disability benefits are capable of performing. It is high time that the Social Security Administration turned its attention to obtaining the needed data.") (collecting cases and references); *accord Voigt v. Colvin*, 781 F.3d 871 (7th Cir.2015) and *Browning v. Colvin*, 766 F.3d 702 (7th Cir.2014). Nonetheless, the Social Security Administration relies upon the DOT as an "authoritative" publication and its definitions are accepted as reliable evidence of how jobs are performed in the national economy. *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999). A VE will also typically rely on job data from The Bureau of Labor Statistics ("BLS"). The recent trends in wages, process, and productivity in the U.S. economy come from the BLS, which is a preferred source for these figures as it contains the largest number of jobs (but does not set forth numbers based on specific DOT codes). The Social Security Administration has taken administrative notice of both the DOT and the Occupational Outlook Handbook published by the BLS. 20 C.F.R. § 416.966(d)(1)-(5).

A finding of an ALJ based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated. *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Although a VE is entitled to rely on various methods and sources of data, the foundation for the VE's opinions must be adequate and VE's testimony must be reliable. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Although the Seventh Circuit has recognized that the standards by which an expert's reliability is measured are less stringent at an SSA administrative hearing than under the Federal Rules of Evidence, because an ALJ's findings must be supported by substantial evidence, an ALJ may depend upon expert testimony only if the

testimony is adequate and reliable. *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004) (referencing *Donahue*, 279 F.3d at 446).

"Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth." *Donahue*, 279 F.3d at 446. "A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie*, 368 F.3d at 911 (citing *Donahue,* 279 F.3d at 446). "If the basis of the vocational expert's conclusions is questioned…then the ALJ should make an inquiry…to find out whether the purported expert's conclusions are reliable." *Donahue,* 279 F.3d at 446 (italics omitted.) [5]

The matter at hand is highly analogous to the situation in *Denham v. Barnhart*, 2006 WL 4097284 (N.D.Ill. May 23, 2006), which relied heavily on *Donahue v. Barnhart*, 279 F.3d 441 (7th Cir. 2002) and *McKinnie v. Barnhart*, 368 F.3d 907 (7th Cir. 2004) in concluding that remand was necessary because the VE failed to provide underlying data when the claimant challenged the foundation of the vocational expert's opinions as to job availability. We remand on the same basis.

*Donahue* and *McKinnie*, along with a myriad of other Seventh Circuit cases and Northern District cases interpreting them, concern the proper inquiry an ALJ must make when a VE's conclusions conflict with the DOT and what must be done to resolve those conflicts. In *Denham*, counsel for the claimant requested to see the VE's backup data and studies during the administrative hearing. The ALJ denied Denham's request. Despite the fact that the SSA argued

---

[5] *Donahue* and *McKinnie* are binding precedent on this Court. The Court is aware of the Second Circuit's *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443 (2d Cir. 2012) decision, discussing *Donahue* and its Seventh Circuit progeny, and noting how the "duty to inquire" exists only in the Seventh Circuit whereas other courts review the entirety of a VE's testimony and methods to make sure it rises to the level of "substantial" evidence. *Brault*, 683 F.3d at 449-50 (references omitted). However, the Second Circuit still cited *Donahue* when it ruled: "[w]e do not hold that an ALJ never need question reliability, and we agree with the Seventh Circuit that evidence cannot be substantial if it is 'conjured out of whole cloth.'" *Id.* at 450 (citing *Donahue*, 279 F.3d at 446).

the data was not necessary because the VE's answers at the hearing provided a detailed and credible explanation of how he reached his conclusions, the *Denham* court disagreed and ordered a remand based of the Seventh Circuit's mandate that the VE's backup data and documentation be "available on demand" when the foundation of the VE's opinions is challenged. *Denham v. Barnhart*, 2006 WL 4097284 at *3 (referencing *McKinnie*, 368 F.3d at 911).

*Denham* is significant because it discusses the applicability of the *Donahue* and *McKinnie* rulings in the context of a vocational expert's job availability statistics rather than the context of a VE's interpretations of job descriptions or classifications. To be clear, *Denham* does not extend these rulings[6], but rather *Denham* fairly interprets the *Donahue* and *McKinney* mandates for an ALJ to more closely examine a VE's opinions when those opinions have had their foundations challenged to determine the basis reliability of those opinions.

*Denham* mirrors precisely what counsel for Plaintiff did here. When Plaintiff's counsel attempted to nail down the VE's methodology for arriving at certain numbers, he asked specifically for the VE's backup data/notes and the VE refused to provide it. In fact, counsel for the Plaintiff made four separate requests for the VE to make available the backup data/notes that support his conclusions.[7] The ALJ was not receptive to these requests. [R 118-121.] Ultimately, the VE refused to provide his notes to the Plaintiff and the ALJ denied Plaintiff's request to access the same. [R 121.] It is plain the ALJ did not follow the binding precedent of *McKinnie*, which requires the VE to produce this data, when she overruled Plaintiff's requests for the VE's

---

[6] *See e.g.*, *Herrmann v. Colvin*, 772 F.3d 1110 (7th Cir. 2014), discussed in Section III(b), *infra*, which the Seventh Circuit also reversed and remanded based, in part, on insufficient VE testimony regarding job availability statistics.

[7] (1) Q: "[C]an you make the data available to me here and now that supports your testimony concerning the numbers of jobs that you claim exist in response to the hypotheticals?" [R 119.] (2) Q: "Can you give me your notes that support how you do these formulas to determine the jobs? A: I said it's subjective based on my experience. There's no specific formula to give you." [R 120.] (3) Q: "Does that mean you cannot give me your data that you relied on in testifying to the numbers today? *** A: I do not give out my data. The only data that is available -- my data is my notes." [R 120-21.] (4) Q: "Will you make [your notes] available to me? A: No." [R 121.]

9

notes.

### b. The VE's Numbers Must Not Be "Conjured Out of Whole Cloth"

Perhaps equally troubling: not only did the VE refuse to make his notes and data available in this case, but the VE's testimony on his methodology seems, to this Court, to reveal that his numbers are indeed "conjured out of whole cloth" as *Donahue* specifically cautions against. *Donahue*, 279 F.3d at 446. After the VE testified he'd modified the numbers taken from the Bureau of Labor Statistics, Plaintiff's attorney asked the VE what his methodology was for reducing the job availability numbers, the VE responded that he'd "just taken a reasonable estimate." [R 116.] When the VE was asked how he determined the reduction percentage was proper, the VE responded, "it's a subjective thing. It's based on my knowledge of the DOT, and it's based on my knowledge of the job market…I don't have enough data to give a much more elaborate methodology." [R 118.] When asked again about his formulas to reduce job numbers, the VE replied, "I said it's subjective based on my experience. There's no specific formula to give you." [R 120.] When the VE was asked whether the reduction percentages he'd testified to were purely guesses, the ALJ objected,[8] and the VE responded, "No. They're estimates." [*Id*.]

Particularly as to the job of "arcade attendant", a position the VE had never done any official surveys of (the record appears to indicate the VE had only observed a single arcade attendant potentially only on a single occasion during his career) [R 116], the VE's numbers "sound like guesses." *See Forsythe v. Colvin*, 813 F.3d 677, 680 (7th Cir. 2016) (reversing and

---

[8] It is uncommon for an ALJ to object to questions posed during an administrative hearing. Because social security proceedings are non-adversarial, the ALJ always has a duty to ensure that the record is fully and fairly developed, even when the claimant is represented by counsel. *See e.g.*, *Smith v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978), *Elbert v. Barnhart*, 335 F. Supp. 2d 892, 905 (E.D. Wis. 2004); *see also, Needs v. Shalala*, 1994 WL 637486, *1 (N.D. Iowa July 15, 1994) (concerning objections made by the administrative judge and the need for a fair hearing) and *Roman v. I.N.S.*, 233 F.3d 1027, 1032 (7th Cir. 2000) (same). While the ALJ objected to one of Plaintiff's counsel's questions [R 118] (the ALJ never states the basis for her objection), this objection did not unduly hamper the presentation of Plaintiff's case; while the ALJ may have been abrupt or terse [R 118-121], the Court is unwilling to conclude that Plaintiff did not receive a fair hearing on this record.

remanding in part because the VE's "suspiciously round [job availability] numbers" "sound like guesses."). Specifically:

> And the example I can think of like that of arcade attendant. Most arcade attendants is pretty cut and dried. It's unskilled and it's light. But if they have to empty a machine they may carry coins of more than 20 pounds. So I've just taken a reasonable estimate that half these jobs probably are more than light. And there's no one who's counting which arcade attendants lift 20 pounds, which don't. So that's just a reasonable estimate.

[R 116.] The VE's suspiciously round 50% reductions (essentially, the VE determined that half of all arcade attendant positions are performed at an exertional level more than light and, thus, 50% of all arcade attendant positions surpassed the limitations a hypothetical individual with some of Plaintiff's disabilities could perform)[9] also sound like guesses conjured from whole cloth and are of the type of unsupported conjecture that caused the courts in *Forsyth* and *McKinnie*, among others, to reverse and remand. The same holds true for the VE's reductions of the number of available office helper and maid/housekeeping cleaner positions.

We borrow language from another Seventh Circuit case (also deciding to reverse and remand) to describe the VE's numbers in this case: "[w]e do not know how the vocational expert in this case calculated the numbers to which he testified. Nothing in the record enables us to verify those numbers, which the administrative law judge accepted." *Herrmann v. Colvin*, 772 F.3d 1110, 1114 (7th Cir. 2014). Similar to *Herrmann*, the only public sources the VE cited for the numbers he quoted was the DOT and the Bureau of Labor Statistics (although he never specifies what BLS publication). The VE did testify he relied on his "experience", "knowledge of the DOT", "knowledge of the job market", and his "40 years of experience working as a -- in the field of vocational rehabilitation, counseling, dealing with employers, dealing with the

---

[9] The Court realizes the current digital era might result in more arcade attendants performing their jobs at a light exertional level if these jobs no longer require the carrying of coins, which would result in *more* arcade attendant positions the Plaintiff is allegedly able to perform, but this red herring illustrates precisely the type of impermissible "whole cloth conjuring" *Donahue* is meant to prevent. The Court is no more competent or permitted to pull these numbers from thin air than a VE who fails to provide support for his opinions.

DOT." [R 120, 114, 118.] However, fatally as in *Herrmann*, the VE "didn't explain how impressions from unspecified past experience and knowledge could enable him to determine numbers of particular jobs." *Herrmann*, 772 F.3d at 1113. Out of an abundance of caution, the Court also reviewed the VE's resume [R 352-54], which the ALJ admitted into evidence (Plaintiff's counsel also stipulated to the VE's qualifications), and found no especially relevant past experience that would enable him to determine numbers of particular jobs. As mentioned above, the ALJ just accepted the VE's numbers without comment and without reference to the fact the ALJ had denied Plaintiff's counsel's request for the VE's backup documentation regarding these numbers. The Court does not believe a reasonable mind would accept the VE's evidence as adequate to support the ALJ's reliance on it and the conclusions the ALJ drew from it. *Richardson*, 402 U.S. at 401; *Zurawski*, 245 F.3d at 887.

Lastly, the Commissioner's argument that certain numbers of jobs are significant for purposes of the act is unavailing. Because it appears the VE's numbers were spun out of whole cloth, the Court cannot be certain whether any of the VE's numbers are correct as to jobs available the Plaintiff could allegedly perform. In short, the ALJ erred when she "unquestioningly" accepted vocational testimony without first "inquiring into the reliability" of the opinion. *McKinnie*, 368 F.3d at 911.

## IV. Conclusion

The Court must reverse and remand this decision as step five of the ALJ's decision lacks sufficient evidentiary support and is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§405(g). We reverse and remand with instructions for the VE to provide his underlying data/notes so that all concerned, including the ALJ, may inquire as to the source and reliability of the VE's opinions as to job availability. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's opinion

as raised by the Plaintiff in Docket No. 14.

Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security [dkt. 13] is granted. The Commissioner's Motion for Summary Judgment [dkt. 15] is denied.


Entered: 4/12/2017

_____
U.S. Magistrate Judge, Susan E. Cox